IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROY LEE MILLER,                    :

     Plaintiff,                   :

vs.                                :   CIVIL ACTION 04-00622-KD-B

BOB RILEY, *et al.*,               :

     Defendants.                  :

## REPORT AND RECOMMENDATION

Plaintiff Roy Lee Miller, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed the instant action alleging violations of 42 U.S.C. § 1983.  This action is before the Court on Defendants' Motion for Summary Judgment (Docs. 26, 27, 35 and 54), and has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.2.  Upon careful review, the undersigned finds that this action is ripe for resolution, and that no evidentiary hearing is necessary as the record is fully developed.  For the reasons stated below, the undersigned recommends that Defendants' motion be **GRANTED**.

I.  SUMMARY OF ALLEGATIONS

Miller is incarcerated at G.K. Fountain Correctional Facility ("Fountain")and is serving a life sentence as a result of his convictions for robbery and murder. (Doc. 1).  On September 27, 2004, Miller filed the instant lawsuit against Defendants Bob Riley (Governor of the state of Alabama),  Donal Campbell (Alabama Prison

Commissioner), Jerry Ferrell  (Warden), Ken Smith (Deputy State Fire Marshal), and Richard Montgomery (State Fire Marshal for the state of Alabama).   Miller alleges that living conditions at Fountain violate his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.[1]  Miller contends that Fountain and its facilities are dilapidated, overcrowded, and unsafe for both inmates and correctional officials.   According to Miller, Fountain's physical plant is

---

[1]Miller's lawsuit also includes a request that this action proceed as a class action. The undersigned is treating Miller's request as a Motion for Class Certification.  While Miller asserts that this action meets the requirements of Rule 23(A), he acknowledges that "the plaintiff, Roy Lee Miller, being incarcerated, lack physical, mobility, such as the freedom, to move about within, or out-side FCC.  They do - not possess the legal knowledge required to fairly and adequately represent the proposed, class, and they do-not have access to various communication media, such as the internet, telephones, or cellular phones, therefore the Court, will be asked to appoint-counsel, to represent, Roy Lee Miller, and the entire proposed class." (Doc. 1 at 29). Miller's request for class action certification is **DENIED**. <u>Wallace v. Smith</u>, 145 Fed. Appx. 300, 2005 U.S. App. LEXIS 16101 (11th Cir. 2005) ("it is plain error to permit an imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").  In this action,  Plaintiff acknowledges that he is not a proper class representative as required by Rule 23(A). Additionally, to date, Plaintiff has not filed a request for appointment of counsel, has made no attempt to establish that exceptional circumstances require the appointment of counsel in this case and has not established that he is in fact an appropriate class representative. See, <u>Kilgo v. Ricks</u>, 983 F.2d 189, 193(11th Cir. 1993)(Prisoners raising civil rights claims, like other civil litigants, have no constitutional right to counsel); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1320 (11th Cir. 1999)(Pursuant to 28 U.S.C. § 1915(e)(1), a court has broad discretion to appoint counsel for an indigent plaintiff in a civil case only if exceptional circumstances exist. Moreover, the mere fact that a lawyer's assistance would be helpful does not amount to an "exceptional circumstance" where the core facts of the case are pretty much undisputed and the legal claims are straightforward.

filthy and is infested with vermin.  Miller also asserts that insects enter through the many broken, unscreened windows of the dormitories.  Miller alleges that paint chips fall from the walls and ceilings of the prison, and that the entire facility is in need of cleaning.  Miller also indicates that Fountain's showers and toilets are often inoperable, and that the restroom facilities are generally unsanitary.

Miller contends that Fountain is overcrowded, housing over 1200 inmates despite a design capacity of 632.  Miller claims that overcrowding at Fountain contributes to a lack of personal space for inmates, resulting in increased violence among the inmate population.  Miller states that "living space per inmate" does not meet minimum standards, and that inmate bunks are situated so close together as to prevent movement around bunk areas, and create obstructions behind which assaults, drug use, and other illegal activities occur.  Miller contends that the close proximity in which inmates are confined contributes to a heightened risk of transmission of communicable diseases.  Miller also complains that conditions at Fountain are unsanitary, as sewage overflows are common, and inmates are often forced to shower in standing water. In addition, Miller contends that Fountain's food service areas, and the meals served to inmates, are filthy, and that inmates work without supervision in Fountain's food preparation areas.  Miller also complains that Fountain's drinking water is contaminated and

unfit to drink.

Miller also alleges that Fountain's fire safety program is deficient. According to Miller, Fountain's dormitories lack smoke detectors, sprinkler systems, fire extinguishers, and smoke exhaust fans. In addition, Miller alleges that Fountain's fire evacuation plan is inadequate because locks at Fountain must be unlocked manually using keys. Miller submits that Fountain's manual locks are a threat to inmate safety as they would slow any fire evacuation. Miller also claims that while Fountain's current fire evacuation plan estimates that the facility can be evacuated within 15 to 25 minutes in the event of fire, the plan does not take into account Fountain's overcrowded conditions and staffing shortages. Miller submits that because of overcrowding and staffing shortages, any evacuation due to fire would take longer than the time estimated, increasing the risk of smoke inhalation deaths among Fountain's inmates. Miller also contends that Fountain's written evacuation plan is deficient because it fails to explicitly instruct inmates as to what they should do in case of fire. Miller also alleges that Fountain's ventilation system fails to provide adequate airflow within inmate dormitories. According to Miller, a metal roof built over Fountain's original roof contributes to the lack of airflow in the prison, resulting in excessive odors, heat and humidity, and mold growth.

Miller also contends that Fountain provides inadequate health

services to inmates.  Miller states that Fountain provides only a single doctor for the 1200 inmates incarcerated at Fountain, and that although the staff physician schedules approximately 50 appointments per day each week, the doctor's additional duties to other prison camps and his private medical practice render him unable to provide the level of medical care required by Fountain's inmate population.  Miller also complains that there is a shortage of nurses at Fountain, and that inmates are subject to delays in receiving diagnoses and medications, even when suffering with ailments.  According to Miller, delays in inmate medical treatment extend to dental care, as Fountain does not provide adequate dental care staffing to meet the needs of Fountain's inmate population.

Miller further contends that Fountain's law library is constitutionally inadequate because it does not contain either the Federal Supplements or the Federal Reporter series.  Miller also claims that the library does not provide adequate space to study or write, and provides seating for only twelve inmates at any given time.

Defendants Riley, Donal, Ferrell, Montgomery and Smith filed Answers and Special Reports wherein they deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity.[2] (Docs. 13, 14, 15, 16, 17, 20, 21).  Defendant Ferrell

---

[2] Plaintiff states he is suing defendants in their official and individual capacities (Doc. 1, at 25).  As state officials, Defendants are absolutely immune from suit for damages in their official capacities.  See

also submitted a sworn affidavit. (Doc. 13, Ex. 1).  On June 26, 2007, Defendants' Special Reports and Answers were converted into a Motion for Summary Judgment. (Doc. 25).  Plaintiff was given notice of the conversion, and of his right to a response. Furthermore, Plaintiff was advised of the requirements of Fed.R.Civ.P. 56 and of the ramifications of a motion for summary judgment. (Doc. 25).  As of the date of this Report and Recommendation, Plaintiff has filed no response.

## II.  CONCLUSIONS OF LAW

### A.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P.56(c).  A factual dispute is "genuine" if the evidence

---

Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the Plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

6

is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." <u>Id</u>.; *accord*, <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F. 2d 994, 998 (11th Cir. 1992), *cert*. *denied*, 507 U.S. 911, 113 S.Ct. 1259, 122 L. Ed. 2d 657 (1993). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). Once the movant satisfies its initial burden under Rule 56( c), the plaintiff is required to produce some evidence to support his constitutional claims. He must "go beyond the pleadings and...designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324. A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment[3]. <u>Harris v. Ostrout</u>, 65 F. 3d 912, 916 (11th Cir. 1995). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

---

[3] In this case, Miller did not respond after Defendants' Answers and Special Reports were converted into a motion for summary judgment. Thus, the only material submitted by Miller that is competent evidence to support his claims is his complaint, which was signed under penalty of perjury. Because it was signed under penalty of perjury, it is being treated by the Court as an affidavit. <u>Dickinson v. Wainwright</u>, 626 F.2d 1184, 1186 (5th Cir. 1980).

proof at trial" summary judgment is due to be granted in favor of the moving party. <u>Celotex</u>, 477 U.S. at 322.   Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. <u>Id.</u>; <u>Everett v. Napper</u>, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in the light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. <u>Brown v</u>. <u>Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990).   The record in this case demonstrates that Miller has failed to establish that there is any genuine issue as to any material facts sufficient to avert judgment in favor of Defendants.

**B. CONDITIONS OF CONFINEMENT CLAIMS**

In order to state a claim under 42 U.S.C. § 1983[4], a plaintiff must establish that "(1)..the conduct complained of was committed by a person acting under color of state law; and (2)...this conduct

---

[4]The Prison Litigation Reform Act ( The "PLRA") requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).   In this action, Defendants have not asserted, let alone established, that administrative remedies were available to Miller, and that he failed to exhaust such remedies.

deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Parratt v. Taylor</u>, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986).

As noted supra, Miller alleges that living conditions at Fountain violate his rights under the Eighth and Fourteenth Amendments[5] to be free from cruel and unusual punishment. The Eighth Amendment does not require that places of incarceration be comfortable. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). However, it does not tolerate inhumane ones. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A prison official may violate the Eighth Amendment by denying an inmate humane conditions of confinement if he is deliberately indifferent to a substantial risk of serious harm.[6] <u>Id</u>. at 837. This requires proof that the prison official "knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." <u>Id</u>. at 847. In order for a condition of confinement to

---

[5] The Eighth Amendment applies to the states through the Fourteenth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-45, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981).

[6] A valid Eighth Amendment claim of this kind has two components: (1) an "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment, <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), and (2) a subjective component which requires the inmate to prove that the prison official was "deliberately indifferent" to prisoner health or safety. <u>Farmer v. Brennan</u>, 511 U.S. at 837.

violate the Eighth Amendment, the condition must be "extreme". Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

While an inmate "need not await a tragic event" before seeking relief, he must at the very least show that the complained-of-condition "poses an unreasonable risk of serious damage to his future health or safety." Id.  Moreover, "the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to the challenged condition of confinement." Id.  It also requires courts to assess "whether society considers the risk that the prisoner complains to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id.  Put differently, the prisoner must "show that the risk of which he complains is not one that today's society chooses to tolerate." Id.

As a preliminary matter, the undersigned notes that with respect to Governor Riley, Commissioner Campbell, Alabama State Fire Chief Richard Montgomery and Deputy Fire Marshal Ken Smith, Miller has failed to provide facts which ties them to any of the alleged constitutional violations.  To the extent Miller seeks to impose liability upon these Defendants under the theory of respondent superior or on the basis of vicarious liability, his claims are unavailing. "Neither respondent superior nor vicarious liability exists under § 1983." Cook v. Sheriff of Monroe County, 402 F. 3d 1092, 1116 (11th Cir. 2005); Monell v. Dep't of Social

10

<u>Serv</u>., 436 U.S. 658, 690-92 (1978); <u>Harris v. Ostrout</u>, 65 F. 3d 912, 917 (11th Cir. 1995); <u>Belcher v. City of Foley</u>, 30 F. 3d 1390, 1396 (11th Cir. 1994); <u>LaMarca v. Turner</u>, 995 F. 2d 1526, 1538 (11th Cir. 1983).   Consequently, Defendants Riley, Campbell, Montgomery and Smith are entitled to summary judgment on Plaintiff's claims against them.

As noted supra, Miller alleges that living conditions at Fountain violate his rights under the Eighth and Fourteenth Amendments[7] to be free from cruel and unusual punishment.   Miller complains that Fountain is overcrowded and understaffed, and that these problems in turn result in increased violence and contributes to a heightened risk of transmission of communicable diseases. Plaintiff has proffered no probative evidence in support of his claims.   Defendants, on the other hand, have not only disputed Plaintiff's claims, but have offered evidence in support.   The sworn affidavit of Jerry Ferrell, who serves as warden of the facility, acknowledges that the facility, which was constructed in 1955 is overcrowded and in need of some repairs, but denies that the inmates are living in inhumane conditions. (Doc. 13, Ex. 1) Ferrell avers that while there are some 1213 inmates housed in a facility designed for 755, all of the inmates are assigned a bed with a mattress and liners and that none of the inmates sleep on

---

[7]The Eighth Amendment applies to the states through the Fourteenth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-45, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981).

the floor.  Ferrell also avers that the inmates are housed in four dormitories, with approximately 190 inmates assigned to each dorm. (Id. at 2).  According to Ferrell, **dorm 1** has 8 toilets, 2 urinals, 15 lavatories, 6 showerheads and one large sink, **dorm 2** has dorm 8 toilets, 6 urinals, 15 lavatories, 6 showerheads and one large sink, **dorm 3** has 8 toilets, 6 urinals, 15 lavatories and 6 showerheads and **dorm 4** has 8 toilets, 6 urinals, 15 lavatories 6 showerheads one large sink.  Ferrell avers that inmates have unlimited access to the toilets, latrines and lavatories, and that the shower schedule runs from 12:00 pm to 10:30 p.m. so that each inmate is able to meet his basic needs. (Id.)

Ferrell further asserts that the dorms and restrooms are cleaned daily, that inmates are allowed to exchange shirts and pants daily, and that the inmates' personal laundry and bed liners are washed and dried each week. (Id. At 6).  Additionally, Ferrell avers that the facility has a contract with the Baldwin Pest Control of Atmore for monthly treatment for pests and rodents, and that the replacement of window panes at the facility occurs on an ongoing basis with approximately 1000 window panes being replaced annually. (Id. at 6).  With respect to the kitchen area, Ferrell avers that Fountain's food service operation meets all state standards and requirements for preparation, storage and disposal of food, as well as sanitation of kitchen instruments.  He further asserts that Fountain's water is provided by the city of Atmore and

meets the quality standards required of any municipal water supply.

   In his affidavit, Ferrell references inspection reports completed by the Alabama Department of Public Health Inspection during 2004 and 2005, and attached to his affidavit. (Id. at 6). The Reports relate to inspections that were conducted of the kitchen and living areas of the facility. The March 29, 2004, report reflects that in 2004, the kitchen area received a score of 92, while the general prison facility area received a score of 90. On the report, it is noted that there should be one shower and sink per every 12 inmates, that some of the window panes in dorm 2 were missing, and that there was flaking paint on the ceiling. With respect to the kitchen, it was noted that "the seal on the walk-in freezer door needs to be replaced. The wall at the walk-in freezer is in need of repair. There was a jacket bakery area. There was a spray bottle of disinfectant that was not labeled. All toxic items must be labeled." (Id.).

   The May 2, 2005, report reflects that in the housing inspection, it was noted that there should be one shower and sink per every 12 inmates and that some of the broken windows in the hall and dorms needed to be repaired, and that the outer openings needed to be protected. The kitchen area received a rating of 91, and the following comments were made: "Storage of scoop in storage area with beans, rice, flour, etc. Make sure fan guard in dishwashing area needs cleaning. Rat in bakery shop. Ceiling in

dishwashing area above fan needed cleaning.  Light shield needed in WI freezer". (Id.).  While the above evidence reflects that there are areas for improvement at the facility, none of the reports suggest that the showers and toilets were not in proper working order, or that the living conditions were unsanitary or inhumane. Miller has not disputed any of the factual information provided by Defendant nor has he offered anything, other than his conclusory assertions, in support of his allegations regarding the living areas and kitchen facilities.  Accordingly, the undersigned finds, based on the record before the Court, that Plaintiff has failed to establish that the living conditions at the facility are inhumane, let alone that Defendants have exhibited deliberate indifference to the conditions at Fountain.

Plaintiff also asserts that Fountain's ventilation system fails to provide adequate airflow within the inmate dormitories, and that Fountain's fire safety program is deficient.  According to Miller, Fountain's dormitories lack smoke detectors, sprinkler systems, fire extinguishers, and smoke exhaust fans, that the cells must be unlocked using manual keys, and that while there is a evacuation plan in place, it is insufficient because it does not take into account that the facility is overcrowded, and it does not explicitly instruct inmates as to what they should do in case of fire.

In his affidavit, Ferrell asserts that smoking is banned in all of Fountain's buildings, and that each main dormitory has four

14

or more exhaust fans in addition to two or more large floor fans, which are strategically located to augment airflow.  According to Defendant, the exhaust system provides adequate ventilation for the inmate population at Fountain.  Ferrell further asserts that an adequate fire safety plan exists at Fountain.

Ferrell states that the facility has a fire safety and evacuation plan, and that pursuant to the plan, fire drills are conducted a minimum of once each quarter, and often, on a monthly basis.  He also states that, "Fire extinguishers are strategically located throughout the facility. Fire evacuation routes are posted and fire evacuation exit doors are panted red.  Correctional officers are assigned to patrol living areas.  Each officer is assigned a hand-held radio.  The facility has an intercom system that is used to alert staff and inmates of fire drills and emergencies that may occur." (Doc. 13, Ex. 1 at 2).

Ferrell also attached to his affidavit a copy of Fountain's Fire Safety and evacuation Plan.  The Plan calls for fire inspections and testing at least once quarter.  The Plan also provides specific procedures regarding fire prevention and evacuation procedures.  Miller has not disputed any of the assertions contained in Ferrell's affidavit, or presented evidence that indicates that smoke detectors and sprinklers are required in the facility.  Moreover, he has not offered any probative evidence that suggests that Fountain's fire and safety Plan is inadequate and exposes inmates to a substantial risk of harm, or that

15

Defendants have exhibited deliberate indifference or reckless disregard with respect to fire safety at the facility. Accordingly, based on the record before the Court, the undersigned finds that Defendants are entitled to summary judgment with respect to this claim.

With respect to Miller's assertion that because the facility is overcrowded and understaffed, there is increased violence among the inmate population, Ferrell denies that inmates are subjected to increased violence.  Ferrell asserts that while the facility is understaffed, they are constantly recruiting employees and that they allow staff to work overtime in order to ensure that they have the proper number of officers to secure the facility.  Ferrell further avers that officers are assigned to the main living areas each shift, and that they are required to randomly search a minimum number of inmates during their assigned shifts, as well as search the common areas in the dormitories.  Additionally, Ferrell avers that all inmates returning to and from the facility from vocational areas must pass through a metal detector, and that all other inmates are stripped-searched as they return to the facility. (Doc. 13, Ex. 1 at 4.).

Ferrell states that for the period January 2005, through August 2005, which is the period immediately prior to the execution of his affidavit, that there had been 3 incidents involving the use of a weapon: one incident involving scissors, one incident involving a wooden walking cane, and one incident involving an

16

alleged weapon which was never recovered.  He further asserts that the inmates involved in the incidents sustained minor injuries. Here again, Miller has not disputed any of the assertions contained in Ferrell's affidavit, nor has he offered any probative evidence that suggests that inmates are in fact subjected to widespread violence at the facility, or that Defendants have exhibited deliberate indifference or reckless disregard with respect to the safety of inmates at the facility.  Accordingly, based on the record before the Court, the undersigned finds that Defendants are entitled to summary judgment with respect to this claim.

As noted previously, Miller contends that Fountain provides inadequate health services to inmates.  According to Miller, the facility has a single doctor for over 1200 inmates, and a shortage of nurses, which results in delays in the delivery of medical services to the inmates.  In his affidavit, Ferrell states that Fountain provides health care services to inmates through a contractual arrangement with Prison Health Services.  Ferrell further states that the contractor currently provides one (1) medical doctor for forty (40) hours per week, one (1) Nurse Practitioner for thirty-two (32) hours per week, two (2) full time Registered Nurses and one(1) part time Registered Nurse, eleven (11) full-time Licensed Practical Nurses and four (4) part-time Licensed Nurses, one (1) full-time dentist, one (1) dental assistant for forty (40) hours per week, one (1) dental hygienist, one (1) medical records clerks, two (2) secretaries, and one (1)

17

Registered Nurse who serves as the Health Service Administrator. (Doc. 13, Ex. 1 at 3).

Miller has not disputed any of the assertions contained in Ferrell's affidavit, nor has he offered any probative evidence that suggests that the medical personnel provided at the facility is not sufficient or that the assigned medical personnel is not rendering adequate medical care. The bottom line is that Miller's conclusory allegations fail to create a genuine issue of disputed fact with respect to the quality of medical care being provided at the facility. Moreover, there is absolutely nothing in the record to suggest that Defendants have exhibited deliberate indifference or reckless disregard with respect to the delivery of medical services to the inmates at the facility. Accordingly, based on the record before the Court, the undersigned finds that Defendants are entitled to summary judgment with respect to this claim.

Finally, Miller alleges that Fountain's law library is inadequate because it lacks copies of the Federal Reporter and Federal Supplement series, and has space for only a limited number of inmates at any given time. To guarantee prisoners their constitutional right of access to the courts, prison authorities are required to provide prisoners with adequate law libraries or legally trained assistance to prepare and file meaningful legal papers. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The primary focus is to "protect the ability of an inmate to prepare a petition or complaint, [and] it is

18

irrelevant" that the state provides for the appointment of counsel in some proceedings. Id. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (internal quotations and citation omitted). The required prison law library must supply the tools and, thus, "a capability" "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis v. Casey, 518 U.S. 343, 355-56, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996). An inmate who shows that a desired actionable challenge to his sentence was "lost or rejected ... because th[e] capability of filing suit [w]as not ... provided, ... demonstrates that the State has failed to furnish adequate law libraries or adequate assistance from persons trained in the law." Id., 116 S.Ct. at 2182 (internal punctuation and citation omitted).

Miller alleges only that his ability to engage in "meaningful legal research" has been limited by the allegedly small size and inadequate supply of books in the Fountain's law library, not that he has lost the ability to file suit to vindicate his rights because of library and included multiple citations to legal authority. Further, the record reflects that inmates at Fountain are allowed access to the law library for 20 hours each week, and that the facility has purchased and maintained books, including reference resource materials, within the confines of the budget which they have been provided. (Id.) Additionally, the facility is in the process of replacing legal texts with computer based research systems. In light of the record before the Court,

19

Miller's conclusory allegations are not sufficient to defeat summary judgment on this claim.

Despite his contentions regarding his conditions of confinement at Fountain, Miller has failed to establish that these conditions deny him the minimal civilized measure of life's necessities or subjects him to a wanton and unnecessary infliction of pain. <u>Wilson</u>, 501 U.S. at 298-299; <u>Rhodes</u>, 452 U.S. at 347. Furthermore, Miller has failed to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety. Specifically, Miller has failed to identify any particular incident or condition from which the defendants could infer that a substantial risk of serious harm existed. Consequently, summary judgment is due to be granted in favor of the Defendants on these claims. See <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.1999).

<u>**CONCLUSION**</u>

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Miller. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED,** and that Plaintiff's Complaint be **DISMISSED** with prejudice.

**DONE** this **21st** day of **August 2007**.


                        _____/s/ SONJA F. BIVINS_____
                        **UNITED STATES DISTRICT JUDGE**

20

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.

Fed. R. Civ. P. 72; SD ALA LR 72.4(b).


3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.